**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| MARY ANN NELCAMP, | Case No. 1:18-cv-17 |
| Plaintiff, | Black, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Mary Ann Nelcamp filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents six claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In March 2014, Plaintiff filed an application for Supplemental Security Income alleging a disability onset date of March 10, 2014, due to physical impairments. (Tr. 22-25). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On October 5, 2016, ALJ Christopher Tindale held a hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. On December 23, 2016, the ALJ denied Plaintiff's application in a written decision. (Tr. 12-24). Plaintiff now seeks judicial review of the denial of her application for benefits.

1

Plaintiff was 38 years old on the date of the ALJ's decision. (Tr. 23-24). She had a high school education, and past relevant work as a nanny (medium exertional level & semiskilled work), fountain server (light exertional level and unskilled work), data entry (sedentary level and semi-skilled work), and a secretary (sedentary exertional level and skilled work). (Tr. 22- 23, 152, 344).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "disorders of the spine; degenerative joint disease of the right knee; chronic sacroiliitis versus bursitis of the right hip; history of deep vein thrombus (DVT); asthma; obesity; a mood disorder; an anxiety disorder; and a personality disorder." (Tr. 22). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> [T]he claimant can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She can have no exposure to extreme temperatures, high humidity, and hazards, such as unprotected heights or dangerous machinery. She can have occasional exposure to pulmonary irritants such as fumes, odor, dusts, gases, and poor ventilation. She is limited to simple, routine tasks consistent with unskilled work in a work environment free of fast production rate or pace work. She can have no contact with the public. She is limited to only occasional and superficial contact with co-workers or supervisors, with superficial contact defined as no tandem tasks. She must work in a low stress environment, defined as having only occasional changes in the work setting and only occasional decision-making required.

(Tr. 17). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ

concluded that Plaintiff is unable to perform her past relevant work. Nonetheless, there are jobs that exist in significant numbers in the national economy that she can perform, including such jobs as price marker, mail sorter, photocopy machine operator, ticket sorter and inspector. Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) improperly assessing Plaintiff's credibility, pain and subjective complaints; 2) improperly evaluating her mental impairments; 3) failing to consider obesity in accordance with Agency regulations; 4) failing to properly evaluate Plaintiff's RFC; 5) improperly assigning great weight to the opinion of the state agency consultative examiner; and 6) failing to accord great weight to the opinion of Plaintiff's treating psychiatrist.[1] Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1)

---

[1] For the Court's convenience, errors five and six will be considered together.

performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work;

4

and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is substantially supported**

*1. Evaluation of Mental Impairments*

Plaintiff argues that the ALJ erred in evaluating Plaintiff's mental impairments and erred in weighing the mental health opinion evidence. Plaintiff's contentions lack merit.

*A. Paragraph B Criteria*

Plaintiff argues that the ALJ failed to properly evaluate her mental impairments in accordance with Agency regulations. Notably, the regulations provide a "special technique" for evaluating the severity of a mental impairment at steps two and three. 20 C.F.R. § 404.1520a(a). This special technique must be followed at each level in the administrative review process. *Id.* At step two, an ALJ must evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). If the

claimant has a medically determinable mental impairment, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" with respect to "four broad functional areas": "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(b)(2), (c) (3). These four functional areas are commonly known as the "B criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq. The degree of limitation in the first three functional areas is rated using the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using the following four-point scale: none, one or two, three, four or more. *Id.* If the ALJ rates the first three functional areas as "none" or "mild" and the fourth area as "none," the impairment is generally not considered severe and the claimant is conclusively not disabled. 20 C.F.R. § 404.1520a(d)(1). Otherwise, the impairment is considered severe and the ALJ will proceed to step three. 20 C.F.R. § 404.1520a(d) (2).

At step three, an ALJ must determine whether the claimant's impairment "meets or is equivalent in severity to a listed mental disorder." *Id.* The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). *Id.*

Importantly, the regulations require an ALJ to document the application of this special technique in the written decision. 20 C .F.R. § 404.1520a(e). Thus, the regulations require an ALJ's written decision to "incorporate the pertinent findings and

6

conclusions based on the technique." 20 C.F.R. § 404.1520a(e)(2). The decision must refer to the "significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.* The decision must also "include a specific finding as to the degree of limitation in each of the functional areas." *Id.* At step three, the ALJ's decision must "record the presence or absence of the criteria [of the listing] and the rating of the degree of functional limitation." 20 C.F.R. § 404.1520a(d)(2).

Here, however, the ALJ explicitly evaluated and rated the four functional areas in his decision. (Tr. 16). As noted by the Commissioner, the ALJ expressly determined that Plaintiff had no more than mild restrictions in performing activities of daily living; no more than moderate difficulties with social functioning or with regard to her abilities to engage in concentration, persistence, and pace; and that she had experienced no episodes of decompensation that have been of extended duration. (Tr. 16). The ALJ correctly explained that because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria (of the mental impairment listed impairments) were not satisfied. (Tr. 16). The ALJ further explained that his residual functional capacity assessment reflected the degree of limitation the he found in the "paragraph B" mental function analysis. (Tr. 17). As such, Plaintiff's argument in this regard should be denied

  B. *Opinion Evidence*

Plaintiff next argues that the ALJ erred in weighing the mental health opinion evidence. In formulating Plaintiff's mental RFC, the ALJ afforded significant weight to

7

the assessments offered by the DDS mental health consultants. Karla Voyten, Ph. D., and Joseph Edwards, Ph. D. both of which determined there were no material changes in the claimant's mental health conditions and thus adopted the psychological limitations identified by the prior decision. (Tr. 21-22). In so concluding, the ALJ noted that these opinions were well support by the evidence of record and were consistent with other record evidence.

The ALJ also gave some weight to the findings of Dr. Berg, the consultative examining psychologist that Plaintiff saw in June 2014. (Tr. 21). Upon examination, Dr. Berg found that Plaintiff is capable of performing simple two-to-three step tasks and determined that she is capable of understanding, remembering, and carrying out verbal instructions. (Tr. 503). The ALJ noted that Dr. Berg's findings were generally consistent with the more specific limitations found by Dr. Voyten and Dr. Edwards. (Tr. 22)

The ALJ also afforded "some weight" to the opinions of Dr. Murthy, Plaintiff's treating psychiatrist. Notably, in April 2014, Dr. Murthy completed a questionnaire indicating the claimant had "moderate" limitations in activities of daily living and that her social interactions, concentration, and ability to tolerate stress were "poor" (citing to Exhibit B6F, Tr. 490-491; Tr. 22). Thereafter, in September 2014, Dr. Murthy completed a second questionnaire in which he indicated the Plaintiff had a "fair" ability to understand, remember, and carry out directions, "fair to poor" ability to maintain attention, and "poor" ability to sustain concentration and react to work pressures (citing to Exhibit B8F/1-3, Tr. 506-508; Tr. 22). The ALJ determined that Dr. Murthy's opinions were not well supported and were inconsistent with other substantial evidence of record.

8

Plaintiff argues the ALJ improperly credited the finding of Drs. Voyten and Edwards because their opinions were not based on a complete case record. Plaintiff further asserts that the ALJ erred in failing to award significant weight to the findings of Dr. Murthy, plaintiff's treating psychologist. Plaintiff assertions will be addressed in turn.

With respect to the ALJ's reliance on Drs. Voyten and Edwards, Plaintiff argues that their findings were not based on a review of a complete case record and therefore should not have been entitled to deference. Notably, in *Blakely,* the ALJ credited the opinions of consulting physicians over the opinion of the plaintiff's treating physician. The Sixth Circuit held that "[i]n appropriate circumstances, opinions from State agency medical ... consultants ... may be entitled to greater weight than the opinions of treating or examining sources." (*Id.,* at 409, quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3 (July 2, 1996)). However, in *Blakely* the court reversed on grounds that the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment ... by *Blakely's* treating sources," and that the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakely,* 581 F.3d at 409 (quoting *Fisk v. Astrue,* 253 Fed.Appx. 580, 585 (6th Cir.2007)). Nevertheless, the Sixth Circuit reiterated the general principle that an ALJ's failure to provide adequate explanation for according less than controlling weight to a treating source may be excused if the error is harmless or *de minimis,* such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Id.* at 409 (quoting *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 547 (6th Cir.2004)). Under *Blakely,* then, an ALJ may choose to credit the opinion of a consultant who has failed to review a complete record, but he

9

should articulate his reasons for doing so. If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis. Swartz v. Astrue,* No. 10–605, 2011 WL 4571877, at *8 (S.D.Ohio Aug.18, 2011) (Bowman, MJ) ("an ALJ may choose to credit the opinion of a consultant who has failed to review a complete record, but he should articulate his reasons for doing so") (citing *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399 (6th Cir.2009)).

Plaintiff contends that Dr. Edwards and Dr. Voyten rendered their findings in July and November 2014, and did not have the benefit of reviewing the progress notes provided by Dr. Murthy in April and Septembr 2014. As such, the ALJ improperly credited their findings. Plaintiff's contention is misplaced. Notably, upon evaluation of the complete record, including the opinion evidence, Plaintiff's treatment history and testimony at the administrative hearing, the ALJ determined that the opinions of Drs. Edward and Voyten were consistent with the overall evidence of record and clearly articulated his rationale for doing so. (Tr. 21-22). Thus, as noted by the Commissioner, the ALJ resolved conflicts between sources, evaluated the complete case record and enunciated the reasons that he chose to credit some medical opinions over others. *See Bender,* 2011 WL 3812665, at *2. As such, the undersigned finds that ALJ's decision comports with the requirements set forth in *Blakely.*

With respect to Dr. Murthy, the ALJ properly determined that his restrictive findings were inconsistent with his own findings as well as the other record evidence. Notably, the vast majority of the treatment records from Plaintiff's treating psychiatrist Dr. Murthy showed Plaintiff was stable and doing well with the medication regimen he

10

prescribed, and that the mental status examination findings Dr. Murthy observed consistently recorded unremarkable findings in terms of Plaintiff's mood, speech, eye contact, thought processes, memory, concentration, insight, and judgment. Dr. Murthy's mental status examination findings were consistently unremarkable findings (in terms of Plaintiff's mood, speech, eye contact, thought processes, memory, concentration, insight, and judgment. (Tr. 22). These findings completely undermined Dr. Murthy's opinions that Plaintiff would have a poor ability to tolerate stress or sustain concentration. (Tr. 22, 490-91, 506-08). As such, the ALJ correctly stated that Dr. Murthy's opinion was not well-supported and was inconsistent with not only his own clinical findings, but also inconsistent with Dr. Berg's mostly normal findings. (Tr. 22). See *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006). See 20 C.F.R. §§ 404.1527(d)(3); 416.927(d)(3) (the better an explanation a source provides for an opinion, particularly objective medical findings, the more weight the ALJ will give to that opinion).

*2. Evaluation of Physical Impairments*

With respect to her physical impairments, Plaintiff asserts that the ALJ failed to properly evaluate her obesity and improperly weighed the opinion evidence. Plaintiff's contentions are unavailing.

*A.     Obesity*

As noted above, the ALJ found Plaintiff's obesity to be a severe impairment. (Tr. 14). Plaintiff complains that although the ALJ referenced her obesity, the ALJ failed to comply with the legal requirements of SSR 02–01p, by considering the impact of obesity

11

in combination with her other impairments. Historically the Sixth Circuit has required only minimal articulation of obesity during the sequential analysis, see *Price v. Heckler*, 767 F.2d 281, 284 (6th Cir.1985); *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 412 (6th Cir.2006) (stating in a case where obesity was not severe, that "[i]t is a mischaracterization to suggest that Social Security Ruling 02–01 p offers any particular procedural mode of analysis for obese disability claimants."). So long as the ALJ's decision as a whole articulates the basis for his or her conclusion, the decision may be affirmed. *See Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir.1985).

Social Security Ruling (SSR) 02-1p, explains that while obesity may cause a limitation of function, no assumptions should be made about the severity or functional effects of obesity, since obesity, in combination with other impairment(s), may or may not increase the severity or functional limitations of the other impairment. SSR 02- 1p. SSR 02-1p instructs that adjudicators evaluate each case based on the information in the case record. Id

Here, the ALJ found that Plaintiff is 5'9" and weighed between 275 to 305 pounds during the relevant period. (Tr. 19). As the ALJ noted that such fluctuation has not prompted any additional treatment or recommendations from her physicians. (Tr. 19). As noted by the Commissioner, the ALJ properly found that the clinical findings show that Plaintiff was capable of performing light or sedentary work despite her obesity. (Tr. 17, 23-24). Treatment notes further indicated that Plaintiff had maintained her weight loss while seeing him, and that her issues were excess skin, rash, irritation, not any weight-related functional limitations; rather, because of her excess skin issues as a

result of her weight loss, he recommended removal of the excess skin. (Tr. 19, 578, 598, 615). Moreover, as the ALJ found, the record confirms that she repeatedly and consistently showed that despite her weight, she was observed to have normal findings in terms of her gait, station, tandem gait, heel/toe gait, strength, sensation, and reflexes. (Tr. 19, 408, 544, 551, 581-82, 598, 618, 662, 676, 685, 726, 732, 751, 771, 817, 861, 1053, 1101, 1290, 1390, 1394, 1399, 1404, 1413, 1425-32, 1445-51, 1465-71, 1486-92, 1507- 13, 1529-35, 1562-69, 1585-92, 1604-1612, 1620-28, 1723, & 1726).

In light of the foregoing, the undersigned finds that the ALJ properly evaluated Plaitniff's obesity and his finding in this regard should not be disturbed.

B. Articulation of RFC

Plaintiff also argues that the ALJ failed to properly articulate how he arrived at his RFC finding. In this regard, Plaintiff contends that the ALJ failed to properly evaluate his residual functional capacity (RFC) finding. (Plaintiff's Brief at 14-17). She argues that she is unable to discern how the ALJ arrived at the RFC, nor what evidence the ALJ relied upon. Id. at 15. She additionally argues that he simply was picking and choosing which evidence to extract in support of his RFC finding, without any logical reasoning. Id. Notably, Plaintiff contends that the ALJ failed to consider the effects of mild kyphosis of the thoracolumbar junction, mild reversal of the normal cervical lordosis with chronic back pain; early degenerative changes-right knee; history of iron deficiency anemia; chronic fatigue issues and her prescribed use of a cane.

As noted above, to determine whether Plaintiff is entitled to benefits, Plaintiff must meet two requirements. First, Plaintiff must establish that she suffers from a medically determinable physical or mental impairment that has lasted or can be

13

expected to last for a continuous period of not less than twelve (12) months. Second, Plaintiff must show that her impairments prevent her from obtaining substantial gainful employment. 42 U.S.C. §§ 423(d)(1)(A), (2)(A), 1382c(a)(3)(A), (3)(B). Plaintiff's RFC is a measure of her capabilities despite the limitations created by her impairments and is used in the assessment of her claims. 20 C.F.R. §§ 404.1545. Social Security Ruling 96–8p requires that the ALJ's RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

Here, the ALJ's decision indicates that his RFC findings comports with Agency regulations and controlling law. Plaintiff's assertions are not supported by the record evidence. Notably, the record shows that she repeatedly denied fatigue issues during the relevant period. (Tr. 542, 550, 581, 597, 617, 661, 732, 750, 817, 860, 916, 1028, 1050, 1217, 1229, 1232, 1289, 1389, 1393, 1398, 1403, 1410, 1423, 1484, 1505, 1527, 1560, 1603, 1619, 1655, 1660, 1665, 1685, 1725, 1729). Also contrary to Plaintiff's assertions, the ALJ adequately discussed her infrequent DVT issues (once due to a change in birth control in March 2014 and once in November 2014 due to stopping anti-coagulant therapy due to pending surgery). (Tr. 20, 539, 551, 554, 588-89, 650, 659-60, 662, 1354, 1359, 1364, 1377-78, 1380, 1407, 1413, 1415, 1633, 1649, 1667-68). Moreover, it is telling that Plaintiff makes no attempt to even suggest what limitations could possibly be warranted by her history of DVT, nor has she cited to any physician suggesting any limitations due to her history of DVT. (Plaintiff's Brief at 20). The ALJ did discuss Plaintiff's claims for the need for an assistive device, but noted that it was completely undermined by the repeated references in the record of Plaintiff having a

normal gait. (Tr. 19, 544, 551, 582, 598, 618, 662, 676, 685, 726, 732, 751, 771, 817, 861, 1053, 1101, 1290, 1390, 1394, 1399, 1404, 1413, 1425, 1427, 1445, 1447, 1465, 1467, 1488, 1531, 1564, 1585, 1604, 1620, 1623, 1723).

As noted by the Commissioner, the ALJ cited to a myriad of evidence in support of the RFC finding, including the overwhelmingly normal clinical findings upon exam. (Tr. 19, 408, 544, 551, 581-82, 598, 618, 662, 676, 685, 726, 732, 751, 771, 817, 861, 1053, 1101, 1290, 1390, 1394, 1399, 1404, 1413, 1425-32, 1445-51, 1465-71, 1486-92, 1507-13, 1529-35, 1562-69, 1585-92, 1604-1612, 1620-28, 1723, & 1726).

In light of the foregoing, the undersigned finds that the ALJ's RFC finding is supported by substantial evidence.

### 3. Credibility

Plaintiff also claims that the ALJ's credibility finding is not substantially supported. In this regard, Plaintiff asserts that the ALJ's credibility assessment failed to consider Plaintiff's "persistent efforts to obtain pain relief." Plaintiff further asserts that her complaints of disabling pain were supported by her treating sources. Plaintiff's contentions lack merit.

As Plaintiff has indicated, the ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual

15

uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96–7p.

Here, the ALJ properly set forth several specific reasons in support of his finding that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 18). *See* 20 C.F.R. § 416.929 (c)(4) (in evaluating the extent to which symptoms, such as pain, limit a claimant's ability to perform work activities, the ALJ will compare a claimant's reported symptoms with the objective medical evidence and other evidence to see if there are conflicts or inconsistencies between the two). As detailed by the Commissioner, the ALJ noted that the treatment records showed her treatment regimen of a low dose narcotic medication and a neurogenic managed her pain. (Tr. 18). The record further indicates that Plaintiff reported that her medications were helpful, or otherwise provided her with sufficient or well-controlled pain relief. (Tr. 18, 1421, 1432, 1441, 1472, 1494, 1503, 1515, 1601, 1722, 1725). The ALJ also properly considered that Plaintiff failed multiple drug screens, suggesting she was taking narcotics not prescribed by her physicians. (Tr. 18, 1482, 1515, 1537, 1558). As such, her physicians stopped prescribing her controlled substances in January 2016, and started her on a very conservative medication regimen (e.g., Ibuprofen and Tylenol). (Tr. 19, 1525-26, 1549, 1554, 1558).

The ALJ noted that Plaintiff's diagnostic study results were not consistent with the alleged severity of her complaints. (Tr. 19). The ALJ also correctly noted that the clinical findings throughout the medical record did not support the alleged severity of

16

Plaintiff's musculoskeletal conditions. (Tr. 19). Moreover, Plaintiff's physical examinations overwhelmingly showed normal findings in terms of her gait, station, tandem gait, heel/toe gait, strength, sensation, and reflexes. *(*Tr. 19, 408, 544, 551, 581-82, 598, 618, 1413, 1425-32, 1445-51, 1465-71, 1486-92, 1507-13, 1529-35, 1562-69, 1585-92.

Based on the foregoing, the undersigned finds that the ALJ's decision adequately sets forth the reasons for his credibility finding and shows he considered the required factors in determining plaintiff's credibility. See 20 C.F.R. § 416.929(c). In light of the ALJ's opportunity to observe plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk v. HHS,* 667 F.2d 524, 538 (6th Cir. 1981). *See also Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir.2007); *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir.1997); *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir.1987). Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MARY ANN NELCAMP,   Case No. 1:18-cv-17

    Plaintiff,   Black, J.
       Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

18